IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

BOB AND ELIZABETH FORTUNE                                            PLAINTIFFS

VS.                                         CIVIL ACTION NO.: 3:14-cv-105-JMV

TAYLOR FORTUNE GROUP, LLC                                             DEFENDANT

## ORDER ON MOTION TO DISMISS

This matter is before the court on Defendant Taylor Fortune Group, LLC's Federal Rule of Civil Procedure 12(b)(6) motion to dismiss for failure to state a claim. Having considered the matter and applying Louisiana substantive law, the court finds the motion is well taken as hereafter explained.

## The Amended Complaint

In their amended complaint ("the complaint"), Plaintiffs assert a cause of action for alleged breach of an oral contract made in Louisiana by their son, Chris Fortune, and the Defendant. Plaintiffs assert they are third party beneficiaries to that contract. Compl. at 4-5. Specifically, Plaintiffs assert in relevant part:

Statement of Facts

…

> After years of success in the restaurant equipment business, Bob and Elizabeth Fortune sold their [Mississippi] business to their son Chris Fortune who bought the company under the name Fortune Equipment Company of Nashville, Inc. for $771,690.00. The sale of the business occurred on February 13, 2006, when Chris Fortune signed a promissory note to pay ninety-six (96) monthly installments of $10,000.00 at six percent (6%) per annum. Beginning in 2009, Chris Fortune was considering selling Fortune Equipment Company of Nashville, Inc. In late 2009, Chris Fortune's brother, Tony Fortune, began to broker a deal between Chris Fortune and Halal Mahdi and Abbas Zeini of Metairie, Louisiana's Taylor Fortune Group, LLC. Tony Fortune initiated

the brokerage of the deal since he had recently merged his restaurant equipment business in south Louisiana with Halal Mahdi and Abbas Zeini's business to form Taylor Fortune, LLC. Taylor Fortune, LLC agreed to purchase the inventory of Fortune Equipment of Nashville, Inc., and agreed to negotiate with Bob and Elizabeth Fortune on a way to make them whole on the debt owed to them by Chris through the 2006 promissory note. In late 2009, Bob and Elizabeth Fortune traveled to Metairie, Louisiana, to meet with Taylor Fortune, LLC, to discuss a payment method for the $525,901.56 owed to them from their son Chris Fortune. The meeting took place at the Taylor Fortune office in Metairie, Louisiana. The individuals present were: Chris Fortune, Bob Fortune, Elizabeth Fortune, Tony Fortune, Butch Shelton, Halal Mahdi, Abbas Zeini, and Blaine Martin. The meeting lasted nearly three hours and centered on how to pay Bob and Elizabeth Fortune out of the merged company's sales. The group agreed that Bob and Elizabeth Fortune would be paid ten percent (10%) of the profits from every sale of new equipment made in the Memphis and Nashville, TN, areas, a larger percentage of profits from the sale of used equipment in these areas, and that Bob Fortune would sell equipment in the Memphis, TN, sales area. The payments would continue until Chris Fortune's debt owed to his parents was paid in full. The agreement between the parties was not reduced to writing. The sales overrides paid to Bob and Elizabeth Fortune began in 2010 and continued until early 2012, when the Defendants suddenly terminated Bob, Chris, and Tony Fortune. The sales override payments paid to the Fortunes over the period of 2010 to early 2012 total between $75,000.00 and $100,000.00. The Defendant has failed to pay any amount of money owed to the Fortunes since the terminations in early 2012 and has taken steps to hinder the Fortunes' business operations. As a result of the Defendant's breach, Bob and Elizabeth Fortune have incurred financial as well as physical and emotional stress because of the loss of income and the interference with business opportunities. The stress associated with recouping the money from the sale of their business was a contributing factor in Plaintiff Bob Fortune's cardiovascular episodes that have occurred within the last two years.

## Breach of Contract

Plaintiffs Bob and Elizabeth Fortune have standing to sue as third party beneficiaries to the contract between Chris Fortune and Taylor Fortune, LLC, of Metairie, Louisiana. Defendant Taylor Fortune, LLC, breached their agreement with Chris Fortune by ceasing all payments to Bob and Elizabeth Fortune after Bob Fortune's termination. The agreement between the parties was intended to make Bob and Elizabeth Fortune whole in regards to

> the debt owed to them by their son Chris Fortune. Taylor Fortune, LLC, has neglected to pay Bob and Elizabeth Fortune for over two years and should be subject to both pre and post judgment interest at six percent (6%) per annum, the original interest rate between Bob and Elizabeth Fortune and their son Chris Fortune.

Am. Compl. at 2-5.

## The Rule 12(b)(6) Legal Standard

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the complaint. *See Ramming v. U.S.*, 281 F.3d 158, 161 (5th Cir. 2001). When performing its analysis, the court must accept the factual allegations of the complaint as true, view them in a light most favorable to the plaintiff, and draw all reasonable inferences in favor of plaintiff. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Leah v. McHugh*, 731 F.3d 405, 410 (5th Cir. 2013). While the court must assume the truth of the complaint's factual allegations, those allegations "must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A plaintiff's obligation to "provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *see also Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). "[T]he tenet that a court must accept as true all allegations contained in the complaint is inapplicable to legal conclusions" or to "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Thus, a complaint may survive a motion to dismiss only if it "states a plausible claim for relief" that "permit[s] the court to infer more than the mere possibility of misconduct" based upon "its judicial experience and common sense." *Id.* at 679.

## Choice of Laws

Because jurisdiction in this matter is premised on diversity of citizenship, in order to determine whether Plaintiffs' complaint meets the Rule 12(b)(6) standard, it is necessary to first access which state's substantive laws – those of Mississippi, as Plaintiffs contend, or those of Louisiana, as Defendant contends – apply. To do so, the court must apply the choice of law rules of the forum state. *Trinity Yachts, LLC v. Thomas Rutherford, Inc.*, No. 1:11CV507–LG–JMR, 2013 WL 820231, at *3 (S.D. Miss. 2013) (citing *Ellis v. Trustmark Builders, Inc.*, 625 F.3d 222, 225 (5th Cir. 2010)). Mississippi's choice-of-law test includes three steps: (1) determine whether the laws at issue are substantive or procedural; (2) if substantive, classify the laws as either tort, property or contract; and (3) look to the relevant section of the Restatement (Second) of Conflict of Laws." *Ellis v. Trustmark Builders, Inc.*, 625 F.3d 222, 225-26 (5th Cir. 2010). In the instant case, the parties do not dispute the laws at issue are substantive and contractual in nature. With regard to the third step, the Restatement (Second) of Conflict of Laws § 188 Section (2) states:

> In the absence of an effective choice of law by the parties (see § 187), the contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include: (a) the place of contracting,(b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicile, residence, nationality, place of incorporation and place of business of the parties. These contacts are to be evaluated according to their relative importance with respect to the particular issue.

*Id.* (internal citation omitted); *see also* RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 6 (2014). "Mississippi courts, in analyzing a case for choice of law purposes, seek to determine the center of gravity of a dispute and apply the law of the place which has the most significant relationship to the event and parties or which … has the greatest concern with the specific issues." *Hartford Underwriters Ins. Co. v. Foundation Health Servs. Inc.*, 524 F.3d 588, 593-94

(5th Cir. 2008). For contract disputes such as this one, the factors most relevant to this decision are the place of contract negotiation and contract formation. *Id.*

In the instant case, the place of contracting was Louisiana. The place of negotiation was Louisiana. The place of performance was also Louisiana in as a much as the alleged obligor is a company with its principal place of business in Louisiana – the apparent location from which any alleged payment obligations are satisfied. Plaintiffs' assertion that the subject matter of the contract is in Mississippi "because the contract revolves around the debt from the sale of a Mississippi business" is suspect. Though the original debt allegedly arose in connection with the sale of stock of a Mississippi corporation to a Tennessee company, the subject oral agreement arose most immediately from the sale of assets of a Tennessee company to a Louisiana company. Finally, while the Mississippi-resident Plaintiffs claim to be third party beneficiaries of the alleged oral contract, the actual parties to the contract at issue are neither from Mississippi and at least one is a citizen of Louisiana. Therefore, Louisiana substantive law will govern this case.

## **The Merits**

Turning now to the merits of the Rule 12(b)(6) motion, Louisiana Civil Code Article 1821 provides as follows:

> An obligor and a third person may agree to an assumption by the latter of an obligation of the former. To be enforceable by the obligee against the third person, the agreement must be made in writing. The obligee's consent to the agreement does not affect a release of the obligor. The unreleased obligor remains solitarily bound with the third person.

LA. CIV. CODE ANN. art. 1821 (1984). Also, the intent to assume the obligation must be clearly expressed on the face of the documents. *Davis Oil Co. v. TS, Inc.*, 962 F. Supp. 872, 885 (E.D. La. 1997) *rev'd*, 145 F.3d 305 (5th Cir. 1998). Here, as Plaintiffs admit, there is no document or writing and, accordingly, no clearly expressed intent on the face of same to assume any

obligation. In the instant case, Plaintiffs acknowledge the statute's requirement of a writing in order that an agreement to answer for the debt of another be enforceable by the obligee. However, they argue, by way of brief in response to the motion to dismiss**,** "Instead, the *possibility* that the Plaintiffs could establish a defense of waiver of the Statute of Frauds or equitable or promissory estoppel precludes dismissal of the complaint based on the Statute of Frauds." Pl.'s Br. in Supp. of Resp. to Def.'s Mot. to Dismiss at 3-4 (emphasis added).

Plaintiffs are in error for several reasons. First, counsel's assertion that he might possibly be able to make out a claim unstated in the complaint, if permitted to proceed, violates the heightened pleading standards announced in *Iqbal* and *Twombly*. In short, no facts are pled whatsoever in the complaint to satisfy the elements of promissory or equitable estoppel or waiver. Moreover, promissory estoppel may not be relied on in the face of a positive legal requirement such as that of a writing set forth in art. 1821. *Morris v. Friedman*, 663 So.2d 19, 24 (La. 1995); *Palermo Land Co. v. Planning Comm'n of Calcasieu Parish*, 561 So. 2d 482, 488 (La. 1990) ("Equitable considerations and estoppel cannot be permitted to prevail when in conflict with the positive written law.").

As for detrimental reliance codified in Louisiana Civil Code Article 1967[1] as a positive claim under certain circumstances where no contract is found to exist, Plaintiffs have not

---

[1] Louisiana Civil Code article 1967 creates a claim for detrimental reliance. It states, "[a] party may be obligated by a promise when he knew or should have known that the promise would induce the other party to rely on it to his detriment and the other party was reasonable in so relying. Reliance on a gratuitous promise made without required formalities is not reasonable. LA. CIV. CODE ANN. art. 1967 (1984). The Louisiana Supreme Court holds in order to prevail on a detrimental reliance claim, a claimant needs to establish: (1) a representation by conduct or word, (2) justifiable reliance, and (3) a change in position to one's detriment because of the reliance. *See Suire v. Lafayette City–Parish Consol. Gov't*, 907 So.2d 37, 59 (La. 2005). "Recovery may be limited to the expenses incurred or the damages suffered as a result of the promisee's reliance on the promise." LA. CIV. CODE ANN. art. 1967 (1984).

suggested such a claim. Further, whether one is otherwise cognizable in the face of Article 1821's writing requirement is doubtful.[2]

Accordingly, the court finds the complaint fails to state a claim for recovery under Louisiana substantive law. The same will be dismissed without prejudice, unless within seven (7) days hereof, Plaintiffs file a motion to amend the complaint. Such motion should include an amended complaint asserting a legally cognizable cause of action in Louisiana, if any, its elements, and facts from which the court may infer the viability of the claim.

**SO ORDERED** this, the 30th day of September, 2014.

/s/Jane M. Virden
**UNITED STATES MAGISTRATE JUDGE**

---

[2] In *John W. Stone Oil Distributor, LLC v. River Oaks Contractors & Developers, Inc.*, the court rejected a plaintiff's attempt to use Article 1967 to avoid the writing requirement for a contract to purchase property. 986 So. 2d 103 (La. Ct. App. 2008).